UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NATHANIEL MARCH,

    Petitioner,

v.                                       Case No: 6:14-cv-1951-Orl-31KRS
                                                              (6:13-cr-57-Orl-31KRS)

UNITED STATES OF AMERICA,

    Respondent.
_____/

## ORDER

This cause is before the Court following an evidentiary hearing held on February 27, 2017, with regard to the Motion to Vacate, Set Aside, or Correct Sentence ("Motion to Vacate," Doc. 1) filed by Petitioner, Nathaniel March, pursuant to 28 U.S.C. § 2255. In particular, the evidentiary hearing concerned March's claim (Claim One) that counsel rendered ineffective assistance by failing to file an appeal after being requested to do so. The Court previously reserved ruling on the merits of all remaining claims (Claims Two and Three) in the Motion to Vacate pending the evidentiary hearing. (Doc. 25).

                I.        PROCEDURAL BACKGROUND

The Procedural Background of this case is set forth in the Court's Order of January 5, 2017, and is incorporated herein. (Doc. 25).

## II. TESTIMONY OF THE WITNESSES

At the evidentiary hearing, James Skuthan, who represented March during the underlying criminal proceedings, testified on behalf of the Government. March testified on his own behalf.

### A. The Testimony of Nathaniel March

March testified that he was sentenced on November 25, 2013. Immediately after sentencing, March met with Skuthan in the holding cell. At that time, March told Skuthan that he wished to file an appeal. Skuthan told March that there were no viable issues for appeal. Nevertheless, March told Skuthan that there was a recent Supreme Court case dealing with the Armed Career Criminal Act ("ACCA") and that Skuthan should file an appeal. According to March, Skuthan stated that he would look into the matter. March was aware that there was a 14-day period in which to file a notice of appeal.

After sentencing, March was transferred to the Seminole County Jail, where he remained for three to four weeks. During that time-period, Skuthan visited him twice. There were no discussions about filing an appeal.

On cross-examination, March stated that it was about nine months after sentencing that he discovered that no appeal had been filed. During those nine months, March never asked Skuthan about the status of the appeal.

2

### B. The Testimony of James Skuthan

Skuthan is a first assistant with the Federal Public Defender's Office in the Middle District of Florida and has worked there since 1990. Skuthan represented March and met with him approximately five times between April 4, 2013, and June 9, 2013. They discussed possible defenses, suppression issues, the penalties involved in the case, and Skuthan's belief that March would be classified under the ACCA. In addition, they also discussed March providing substantial assistance to the Government in order to get his sentence below the mandatory minimum. March agreed and provided his first proffer on June 20, 2013, and his second proffer on August 23, 2013. March refused to provide a third proffer because he did not want to risk harm to his family.

Prior to sentencing, Skuthan, a representative from the United States Probation Office, and the prosecutor in the case attended a "position of parties meeting" to discuss the Presentence Investigation Report ("PSI"). Skuthan raised objections to the PSI, which were successful in that the parties agreed to lower March's offense level for sentencing.

Skuthan met with March two times in September 2013. Skuthan provided March with cases pertaining to the ACCA. Skuthan also met with March the night before sentencing and discussed his appellate rights. Skuthan informed March that he had waived his right to appeal under the terms of the Plea Agreement, except for a few issues such as a sentence imposed above the guidelines.

3

After sentencing, March informed Skuthan that he did not want Skuthan to file an appeal and that he did not want Skuthan to do anything further on his case. In fact, March informed Skuthan-- "I'm through with you." According to Skuthan, March was upset and specifically told Skuthan that he did not want him to file an appeal or to do anything else with regard to his case.

The day after sentencing March left a voicemail with Skuthan asking if he could be designated to the correctional facility in Coleman, Florida. Skuthan spoke with the prosecutor, who had no objection to the designation. Skuthan then contacted the courtroom deputy, and the Judgement reflected the recommendation that March be placed in a correctional facility in Coleman, Florida.

Skuthan again spoke with March in December 2013 about a third proffer because the Government was still interested, but March declined. Skuthan had no further personal contact with March, and he closed the case file on December 3, 2013. March did send Skuthan a letter dated January 27, 2014, inquiring as to whether an appeal was filed and, if not, "please don't, I will file an appeal on my own behalf . . . ." (Doc. 32-1 at 2).

### III.   FINDINGS OF FACT AND CONCLUSIONS OF LAW

In *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000), the United States Supreme Court determined that the ineffective assistance of counsel test in *Strickland*[1] applies to claims

---

[1] The United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984), established a two part test for determining whether a convicted person is

that counsel was constitutionally ineffective for failing to file a notice of appeal. The *Roe* Court also recognized the long established rule that "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable." *Id*. at 477 (citations omitted). The case law is clear that such an omission would be prejudicial to a petitioner, even absent a showing of any viable grounds for appeal. *Martin v. United States*, 81 F.3d 1083, 1084 (11th Cir. 1996) ("[A] defendant is prejudiced where his attorney fails to file an appeal after being requested to do so, even after the defendant pled guilty. In this situation, the defendant is entitled to an out-of-time-appeal, even without showing whether or not there are any viable grounds for such an appeal.").

Assessing the weight of the evidence and the credibility of witnesses is reserved for the Court. *See Castle v. Sangamo Weston, Inc.*, 837 F.2d 1550, 1559 (11th Cir. 1988) ("Assessing the weight of evidence and credibility of witnesses is reserved for the trier of fact."). After a careful weighing of the evidence, this Court finds that the testimony presented by Skuthan as to the facts is more credible than March's testimony. The Court notes that Skuthan has been an assistant federal public defender since 1990, and he is a skilled attorney with vast experience in federal sentencing law. Moreover, the record reflects that Skuthan provided representation at the highest professional level.

---

entitled to relief on the ground that his counsel rendered ineffective assistance: (1) whether counsel's performance was deficient and "fell below an objective standard of reasonableness"; and (2) whether the deficient performance prejudiced the defense. *Id*. at 687-88.

5

On the other hand, March's testimony was uncorroborated, and March's testimony was clearly motivated by his desire to file a belated appeal.

Skuthan's testimony reveals that he and March discussed whether to file an appeal, that March did not want Skuthan to pursue an appeal, and that March did not want Skuthan to have any further involvement in his case after sentencing. Nevertheless, Skuthan continued to assist March by obtaining the Court's recommendation that March be designated to the correctional facility in Coleman, Florida and by inquiring if March would like to provide a third proffer to the Government.

Under the circumstances, the Court determines that Skuthan consulted with March about pursuing an appeal; that March decided not to pursue an appeal; that March never instructed Skuthan to pursue an appeal; and that, at the conclusion of sentencing, March informed Skuthan that he was to have no further involvement in his case. Therefore, Claim One is denied.

### III. Petitioner's Remaining Claims

March raises two additional claims, which he identifies as Claims Two and Three. These claims contain similar arguments and involve counsel's alleged failure to raise objections to his PSI at sentencing. Since the factual and legal assertions of these claims overlap, they will be addressed together.

March states that counsel was ineffective at sentencing for failing to object "to the PSR to contest the summarization of it's [sic] findings for sentencing since there had

been [an] intervening change in Supreme Court law affecting the legality of [his] sentence." (Doc. 1-1 at 4). March mentions that "the PSR [erroneously] maintained that [he] had the three previous convictions necessary for ACCA enhancement . . . ." (*Id*.). March maintains that the "ACCA enhancement was error because [he] does not have the necessary qualifying predicate offenses for ACCA enhancement . . . ." (*Id*. at 7). March also relies on *Descamps v. United States*, 133 S. Ct. 2276 (2013) and *Johnson v. United States*, 135 S. Ct. 2551 (2015) for the proposition that his sentence was illegal. (Doc. 1-1 at 5). March raised the *Johnson* claim in his Motion for Clarification (Doc. 17).

The Court finds that these claims are without merit. First, the Court notes that Skuthan raised objections to the PSI challenging the initial sentencing range of 188-235 months. (Doc. 10 at 2). A position of the parties meeting took place, and the parties agreed with Skuthan's objections. (*Id*.). Consequently, the sentencing range was lowered to 135-168 months. (*Id*.). Thus, Skuthan raised successful objections to the PSI, which resulted in the lowering of the guidelines sentencing range.

Next, March has failed to demonstrate that there were insufficient prior convictions to qualify him under the Armed Career Criminal Act ("ACCA"), and he has not shown that there was any basis to raise those objections to the PSI.

Further, March's reliance on *Descamps* and *Johnson* is misplaced. March was adjudicated guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e)(1). Under the ACCA, an individual who violates § 922(g) and has three previous convictions for a violent felony, a serious drug offense, or both,

is subject to a fifteen-year minimum sentence. § 924(e)(1). The ACCA defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that: (1) "has as an element the use, attempted use, or threatened use of physical force against the person of another"; (2) "is burglary, arson, or extortion, involves use of explosives"; or (3) "otherwise involves conduct that presents a serious potential risk of physical injury to another." § 924(e)(2)(B). These definitions of "violent felony" fall into three respective categories: (1) the elements clause; (2) the enumerated-crimes clause; and (3) and the residual clause. The Supreme Court of the United States held in *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) that the ACCA's residual clause--defining a violent felony as one that "otherwise involves conduct that presents a serious potential risk of physical injury to another"--is unconstitutionally vague. In *Descamps*, the Supreme Court clarified that federal courts construing state criminal statutes for purposes of deciding whether the state criminal offense constituted a violent felony under ACCA must "focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285.

The PSI identified two prior convictions that were serious drug offenses: delivery of cocaine (1990), and possession with intent to sell or deliver and delivery of cocaine (1998). (PSI at 5, 7, 10, 12). The PSI also identified four prior convictions that qualified as violent felonies: battery on a law enforcement officer (1992), burglary of a dwelling (1995), aggravated assault with a firearm (1998), and battery on a law enforcement officer (2007). (*Id*. at 5, 8-9, 12-13).

The 1990 conviction for sale and delivery of cocaine and the 1998 conviction for possession of cocaine with intent to sell or deliver both involved a violation of § 893.13(1)(A)(1), Fla. Stat. The decision in *Johnson* concerns the residual clause in the violent-felony definition; it has no bearing on the definition of "serious drug offense." *United States v. Darling*, No. 14-14930, 2015 WL 4546175, at *3 n.5 (11th Cir. July 29, 2015). Further, March's reliance on *Descamps* is without merit because *Descamps* did not change the definition of serious drug offenses under the ACCA. *United States v. Johnson*, 570 F. App'x 852, 857 (11th Cir. 2014). March's drug convictions meet § 924(e)(2)(A)(ii)'s definition of "serious drug offense."

March's 1998 conviction for aggravated assault with a firearm in violation of § 784.021(1)(A), Florida Statutes continues to support his ACCA designation after *Johnson*. Whereas *Johnson* prohibits reliance on the ACCA's residual clause to establish that an offense is a violent felony, the offense of aggravated assault qualifies as a violent felony under the ACCA's elements clause, which requires that the offense have "as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(e)(2)(B)(i); *see also In re Hires*, 825 F.3d 1297, 1301 (11th Cir. 2016) ("a Florida conviction for aggravated assault under § 784.021 is categorically a violent felony under the ACCA's elements clause."). Consequently, March had at least three convictions that still qualify as violent felonies or serious drug offenses, and he was properly sentenced under the ACCA.

The Court concludes that March has failed to show that counsel acted deficiently with regard to the allegations raised in Claims Two and Three or that he sustained prejudice. As a result, Claims Two and Three are denied.

## IV. CERTIFICATE OF APPEALABILITY

This Court should grant an application for a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Lamarca v. Sec'y, Dep't of Corr.*, 568 F.3d 929, 934 (11th Cir. 2009). However, the petitioner need not show that the appeal will succeed. *Miller-El v. Cockrell*, 537 U.S. 322, 337 (2003).

March fails to demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. Moreover, March cannot show that jurists of reason would find this Court's procedural rulings debatable. March fails to make a substantial showing of the denial of a constitutional right. Thus, the Court will deny March a certificate of appealability.

## V. CONCLUSION

1. The Motion to Vacate, Set Aside, or Correct Sentence (Doc. 1) is **DENIED**.
2. This case is **DISMISSED with prejudice**.
3. Petitioner is **DENIED** a certificate of appealability.

4. The Clerk of the Court is directed to enter judgment in favor of Respondent and to close this case.  A copy of this Order and the judgment shall also be filed in criminal case number 6:13-cr-57-Orl-31KRS.

5. The Clerk of the Court is directed to terminate the section 2255 motion (Criminal Case Doc. 42) filed in criminal case number 6:13-cr-57-Orl-31KRS.

**DONE** and **ORDERED** in Orlando, Florida on March 3, 2017.



GREGORY A. PRESNELL
UNITED STATES DISTRICT JUDGE

Copies furnished to:

Counsel of Record
OrlP-2 3/3